# EXHIBIT A

# UNITED STATES DISTRICT COURT
for the

District of Vermont

| | |
|---|---|
| In re Application of Chevron Corp. ) | |
| *Plaintiff* ) | |
| v. ) | Civil Action No. |
| Douglas C. Allen, P.A. ) | |
| ) | (If the action is pending in another district, state where: |
| *Defendant* ) | ) |

**SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION**

To:   Douglas C. Allen,          East Montpelier, VT

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: Paul Frank + Collins<br>One Church Street<br>Burlington, VT 05401 | Date and Time:<br>11/03/2010 9:00 am |
|---|---|

The deposition will be recorded by this method:   stenographic means and video recording

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

See Attachment A.  Documents responsive to the requests in Attachment A should be produced at the offices of Paul Frank + Collins, One Church Street, Burlington, VT 05401, by 10 a.m. on October 29, 2010.

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date: _____

   *CLERK OF COURT*

   OR

_____         _____
*Signature of Clerk or Deputy Clerk*        *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*   Chevron Corp.
_____ , who issues or requests this subpoena, are:

Robert DiPalma, Paul Frank + Collins, One Church Street, Burlington, VT 05401
RDiPalma@PFClaw.com
(802) 658-2311

Civil Action No.

# PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____
was received by me on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.
  **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     **(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
     **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.
  **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:
     **(i)** fails to allow a reasonable time to comply;
     **(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
     **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
     **(i)** disclosing a trade secret or other confidential research, development, or commercial information;
     **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
     **(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
  **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
     **(i)** expressly make the claim; and
     **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

# ATTACHMENT A

# DEFINITIONS

1.  The phrase "1782 ACTIONS" shall mean and refer to legal proceedings filed by Chevron pursuant to 28 U.S.C. §1782 seeking discovery RELATING TO the LAGO AGRIO LITIGATION, including without limitation the instant action and the following proceedings: *Petitioner Chevron v. Respondents Stratus Consulting, Inc., et al.*, Case No. 10-cv-00047-JLK (D. Colo.); *In re Application of Chevron Corporation*, Misc. No. 1:10-MI-0076 (N.D. Ga.); *In re Application of Chevron Corporation*, Misc. No.4:10-MC-134 (S.D. Tex.); *In re Application of Chevron Corporation, et al.*, Misc. No. M-19-111 (S.D.N.Y.); *In re Application of Chevron Corporation for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings*, No. 10-cv-2675 (SRC) (D.N.J.); *In re Application of Chevron Corporation*, No. 3:10-cv-01146-IEG-WMC (S.D. Cal.); *In re Application to Issue a Subpoena for the Taking of a Deposition and the Production of Documents*, No. 1:10-mc-00371-CKK (D.D.C.); *Chevron v. Quarles*, 3:10-cv-00686 (M.D. Tenn.); *In re Application of Chevron Corp.*, No. 10-mc-00002 (LAK) (S.D.N.Y.); *In re Application of Chevron Corporation, et. al.*, No. 1:10-mc-00021 (D.N.M.); *Chevron Corporation v. Champ,* 1:10-mc-00027-GCM-DLH (W.D.N.C.) and any other similar actions filed by Chevron Corporation.

2.  The term "3TM" shall mean and refer to 3TM Consulting, LLC and 3TM International, Inc., organized under the laws of the State of Texas, and include 3TM's partners, executives, directors, officers, contractors, employees, servants, representatives, agents, insurance companies, attorneys, accountants, investigators, assigns, or any other person or entity acting, or purporting to act, on 3TM's behalf, either directly or indirectly, whether as an employee or as an independent contractor.

**ATTACHMENT A TO DOUGLAS C. ALLEN, P.A. SUBPOENA**

3. The term "ALLEN EXPERT REPORT" shall mean and refer to the report submitted under YOUR name, titled "Environmental Damages Valuation: Texpet-Ecuador Concession Area" and filed by PLAINTIFFS' ATTORNEYS on September 16, 2010, for use in the LAGO AGRIO LITIGATION.

4. "And" includes the word "or" and vice-versa.

5. The term "ANONYMOUS DAÑOS CULTURALES EXPERT REPORT" shall mean and refer to the report titled "Daños Culturales Causados a los Pueblos Indígenas de la Amazonía Ecuatoriana" and filed by PLAINTIFFS' ATTORNEYS on September 16, 2010, for use in the LAGO AGRIO LITIGATION.

6. "Any" includes the word "all" and vice-versa.

7. The term "BARNTHOUSE EXPERT REPORT" shall mean and refer to the report submitted under the name of Lawrence W. Barnthouse, titled "Evaluation of Natural Resource Service Losses Related to Oil Field Development in the Concession" and filed by PLAINTIFFS' ATTORNEYS on September 16, 2010, for use in the LAGO AGRIO LITIGATION.

8. The phrase "CABRERA" shall mean and refer to Court Expert Richard Stalin Cabrera Vega, any PERSON assisting him in the LAGO AGRIO LITIGATION, including without limitation any individual identified in Annex V to the Technical Summary Report, by Engineer Richard Stalin Cabrera Vega, Expert For The Court Of Nueva Loja, dated March 24, 2008, and any document or report submitted under his name.

9. The phrase "CABRERA REPORTS" shall mean and refer to the "Technical Summary Report," submitted under the name of Engineer Richard Stalin Cabrera Vega, Expert For The Court Of Nueva Loja, dated March 24, 2008, and the November 2008 Responses To

2

The Plaintiffs' Questions Concerning The Expert Report, submitted under the name of Engineer Richard Stalin Cabrera Vega, and any drafts, parts, sections, or annexes of those documents.

10. The phrase "CABRERA WORKPLAN" shall mean and refer to the June 25, 2007 filing under the name of CABRERA titled "Work Plan for Expert Determination" and any drafts, parts, sections, or annexes of that document.11.The term "CHEVRON" shall mean and refer to Chevron Corporation, Texaco Inc., and/or TEXPET.

11. The term "COMMUNICATION(S)" shall mean the transmittal of any information by any method and includes all meetings, discussions, telephone conversations, contracts, letters, e-mails, memoranda, correspondence, reports, statements, consultations, negotiations, estimates, purchase orders and any DOCUMENT relating thereto.

12. The phrase "CONTRIBUTED TO" or "CONTRIBUTING TO" or "CONTRIBUTION TO" shall mean and refer to the act of adding or contributing WORK, whether through drafting, revision, comments, suggestions, guidance or assistance of any kind.

13. The terms "DOCUMENT" or "DOCUMENTS" shall mean all communications in a tangible form, however produced, reproduced, or stored on any electronic media from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form (including servers, hard drives, jump drives, CDs, DVDs or any other storage device), and shall include, but shall not be limited to, the following:  all records; memoranda; reports; financial statements; handwritten and other notes; transcripts; papers; databases; maps; statistical models; formulas; graphs; spreadsheets; computer software customized or generated in the course of YOUR WORK; files downloaded, printed, or otherwise captured from the internet; indices; letters; envelopes; telegrams; cables; telex messages; tabulations; work papers; timesheets; statements; summaries; opinions; journals; desk calendars;

appointment books; diaries; magazines; newspapers; booklets; circulars; bulletins; notices; instructions; manuals; notes or summaries of telephone conversations, messages, or other communications of any type; video recordings; photographs; tape or other recordings; punch cards; discs; data cells; drums; printouts; and other data compilations from which information can be obtained; electronically-stored information; correspondence; teletype messages; electronic mail; instant messages; internal memoranda; agreements; diary entries; minute books; financial records; accounting records; income tax returns; ledgers; journals; audits; receipts; canceled checks; check stubs; drafts; deeds; leases; mortgages; assignments; insurance policies; or other instruments related to real or personal property; printed or typed matter; diagrams; plans; pictures; travel, entertainment, or expense records or reports; or any other tangible thing that constitutes matter.  The term "DOCUMENT" and "DOCUMENTS" shall also mean originals and exact copies or reproductions of all such written, printed, typed, recorded or graphic material or matter upon which notations or markings in writing, print or otherwise have been made which do not appear in the originals, and electronic files in native format with all associated data intact, including without limitation, system and imbedded metadata.

   14. The term "DOUGLAS C. ALLEN, P.A." shall mean and refer to Douglas C. Allen, P.A. and includes DOUGLAS C. ALLEN, P.A.'s partners, executives, officers, contractors, employees, servants, representatives, agents, insurance companies, attorneys, accountants, investigators, assigns, or any other person or entity acting, or purporting to act, on DOUGLAS C. ALLEN, P.A.'s behalf, either directly or indirectly.

   15. The term "EMA" shall mean and refer to the Ley de Gestión Ambiental, Codification 2004-019, also known as the Environmental Management Act, enacted by the Ecuadorian National Congress.

16. The term "E-TECH" shall mean and refer to E-Tech International and includes E-TECH's partners, executives, directors, officers, contractors, employees, servants, representatives, agents, insurance companies, attorneys, accountants, investigators, assigns, or any other person or entity acting, or purporting to act, on E-TECH's behalf, either directly or indirectly.

17. The phrase "EXPERT TESTIMONY" shall mean and refer to the giving of oral or written expert opinion to a court in any form, whether by declaration, report, deposition, trial testimony, or otherwise.

18. As used herein, the term "FDA" shall mean and refer to the Frente de Defensa de la Amazonía, including FDA's members, partners, contractors, employees, servants, representatives, agents, insurance companies, attorneys, accountants, investigators, assigns, or any other person or entity acting, or purporting to act, on FDA's behalf, either directly or indirectly.

19. The phrase "FORMER CONCESSION AREA" shall mean and refer to the area within the Oriente District of eastern Ecuador in which TEXPET conducted petroleum exploration and production operations between 1964 and June 1990.

20. The phrase "GLOBAL EXPERT ASSESSMENT" shall mean and refer to WORK referred to in the Plaintiffs' Request for Expert Appointment, filed by Alberto Wray and labeled as No. 4677, Case No. 002-2003, *Maria Aguinda y Otros v. Chevron Corporation*, Provincial Court of Justice of Sucumbíos in Nueva Loja, Ecuador, including, but not limited to the CABRERA WORKPLAN and CABRERA REPORTS.

21. The phrase "GOVERNMENT OF ECUADOR" shall mean and refer to the governing political body in Ecuador, including without limitation its president, attorney general,

judges, other officials, politicians, partners, contractors, employees, servants, representatives, agents, agencies, officers, insurance companies, attorneys, accountants, investigators, assigns, or any other person or entity acting, or purporting to act, on the GOVERNMENT OF ECUADOR'S behalf, either directly or indirectly.

  22. The term "IDENTIFY" or "IDENTIFIED," when used in reference to:

    a. A person who is an individual, shall mean to state his or her name, current or last known employer, position, current or last known business or residence address (designating which), and business or residence telephone number (designating which);

    b. A person that is a firm, partnership, corporation, proprietorship, association, or other organization or entity shall mean to state the full name and present or last known address and telephone number, the legal form of such entity or organization, and the identity of its chief executive officers; and

    c. A DOCUMENT shall mean to state the date thereof and to identify the writer or originator of the DOCUMENT, any persons to whom it was sent and/or copied, the subject matter dealt with in the DOCUMENT, the present location(s) thereof, and the name(s) of the custodian(s) thereof.

  23. The term "JSHEFFTZ CONSULTING" shall mean and refer to Jonathan S. Shefftz and JShefftz Consulting and includes JSHEFFTZ CONSULTING's partners, executives, officers, contractors, employees, servants, representatives, agents, insurance companies, attorneys, accountants, investigators, assigns, and any other person or entity acting, or purporting to act, on JSHEFFTZ CONSULTING's behalf, either directly or indirectly.

6

24. The phrase "JUDICIAL INSPECTION REPORT DATA" shall mean and refer to any DOCUMENT or other information RELATING TO inspections of approximately 122 well sites and production stations in the FORMER CONCESSION AREA ordered by the Provincial Court of Justice of Sucumbíos in Nueva Loja, Ecuador, in connection with the LAGO AGRIO LITIGATION.

25. The phrase "LAGO AGRIO LITIGATION" shall mean and refer to the case of *Maria Aguinda y Otros v. Chevron Corporation*, currently pending in the Provincial Court of Justice of Sucumbíos in Lago Agrio, Ecuador.

26. The term "PERSON" shall mean any individual, corporation, organization, association, partnership, enterprise, limited partnership, limited liability company, firm, joint venture, trustee, governmental body, agency, governing board, department or division, or any other entity.

27. The term "PICONE EXPERT REPORT" shall mean and refer to the report submitted under the name of Carlos E. Picone, titled "Estimated Cost of Delivering Health Care to the Affected Population of the Concession Area of Ecuador" and filed by PLAINTIFFS' ATTORNEYS on September 16, 2010, for use in the LAGO AGRIO LITIGATION.

28. The phrase "PLAINTIFF AFFILIATED PERSON" shall mean and refer to any PERSON directly or indirectly assisting PLAINTIFFS in the LAGO AGRIO LITIGATION, including without limitation PLAINTIFFS' LAWYERS, PLAINTIFFS' CONSULTANTS, PLAINTIFFS' NEW EXPERTS, PLAINTIFFS' JUDICIAL INSPECTION EXPERTS, FDA, SELVA VIVA, and the GOVERNMENT OF ECUADOR.

29. The phrase "PLAINTIFFS" shall mean and refer to Alfredo Donaldo Payaguaje Payaguaje; Angel Justino Piaguaje Lucitante; Armando Wilfrido Piaguaje Payaguaje; Beatriz

Mercedes Grefa Tanguila; Benancio Fredy Chimbo Grefa; Bertha Antonia Yumbo Tanguila; Carlos Grefa Huatatoca; Catalina Antonia Aguinda Salazar; Celia Irene Viveros Cusanga; Clide Ramiro Aguinda Aguinda; Daniel Carlos Lusitande Yaiguaje; Delfin Leonidas Payaguaje Payaguaje; Elias Roberto Piyaguaje Payahuaje; Emilio Martin Lusitande Yaiguaje; Esteban Lusitande Yaiguaje; Fermin Piaguaje Payaguaje; Francisco Alvarado Yumbo; Francisco Matias Alvarado Yumbo; Francisco Victor Tanguila Grefa; Gloria Lucrecia Tanguilla Grefa; Guillermo Vicente Payaguaje Lusitante; Heleodoro Pataron Guaraca; Hugo Gerardo Camacho Naranjo; Javier Piaguaje Payaguaje; Jose Gabriel Revelo Llore; Jose Miguel Ipiales Chicaiza; Lidia Alexandra Aguinda Aguinda; Lorenzo Jose Alvarado Yumbo; Lourdes Beatriz Chimbo Tanguila; Lucio Enrique Grefa Tanguila; Luis Agustin Payaguaje Piaguaje; Luis Armando Chimbo Yumbo; Luisa Delia Tanguila Narvaez; Maria Aguinda Salazar; Maria Clelia Reascos Revelo; Maria Hortencia Viveros Cusanga; Maria Magdalena Rodriguez Barcenes; Miguel Mario Payaguaje Payaguaje; Narcisa Aida Tanguila Narvaez; Octavio Ismael Cordova Huanca; Olga Gloria Grefa Cerda; Patricio Alberto Chimbo Yumbo; Patricio Wilson Aguinda Aguinda; Reinaldo Lusitande Yaiguaje; Rosa Teresa Chimbo Tanguila; Segundo Angel Amanta Milan; Simon Lusitande Yaiguaje; and Teodoro Gonzalo Piaguaje Payaguaje.

30. The phrase "PLAINTIFFS' CONSULTANTS" shall mean and refer to any and all people or organizations retained by any PLAINTIFF AFFILIATED PERSON for purposes related to analysis of environmental harm, personal injury, remediation, compensation or other disputed issues in the LAGO AGRIO LITIGATION. The phrase includes, but is not limited to, YOU, STRATUS, E-TECH, UBR, 3TM, Charles Calmbacher, Charles Champ, Lawrence W. Barnthouse, Richard Kamp, Mark Quarles, David Russell, Jonathan Shefftz, Carlos E. Picone, William Powers, Daniel L. Rourke, and R. Paolo Scardina.

8

31. The phrase "PLAINTIFFS' JUDICIAL INSPECTION EXPERTS" shall mean and refer to Charles Calmbacher, Jennifer Bilbao Garcia, Edison Camino Castro, Oscar Miguel Dávila Benitez, Orlando Manuel Felicita Nato, Xavier Alonso Grandes Zambonino, José Robalino Hidalgo, Amaury Mauricio Suárez Rivera, Luis Alberto Villacreces Carvajal, Francisco Viteri Santamaria, and Fabian Alberto Mora Orozco.

32. The phrase "PLAINTIFFS' LAWYERS" shall mean and refer to any lawyer, attorney or counselor, or PERSON acting on their behalf or assisting them, that has at any time represented or advised PLAINTIFFS in the LAGO AGRIO LITIGATION or the 1782 ACTIONS, or having a financial interest of any kind in the LAGO AGRIO LITIGATION or the 1782 ACTIONS, including but not limited to Steven Donziger, Joseph Kohn, and Pablo Fajardo.

33. The term "PLAINTIFFS' NEW EXPERT REPORTS" shall mean and refer to the BARNTHOUSE EXPERT REPORT, the ALLEN EXPERT REPORT, the SHEFFTZ EXPERT REPORT, the PICONE EXPERT REPORT, the ROURKE EXPERT REPORT, the ROURKE SUPPLEMENTAL EXPERT REPORT, the SCARDINA EXPERT REPORT and the ANONYMOUS DAÑOS CULTURALES EXPERT REPORT.

34. The terms "PROVIDE" or "PROVIDED" shall mean to provide, to procure, to render, to furnish, to make available, to get, or to supply what is desired or needed either directly or indirectly.

35. The phrase "RELATED TO" and "RELATING TO" shall mean in relation to, related to, consisting of, referring to, reflecting, concerning, discussing, evidencing, commenting on, supporting, contradicting or having any logical or factual connection with the matter identified, in whole or in part.

36. The term "ROURKE EXPERT REPORT" shall mean and refer to the report submitted under the name of Daniel L. Rourke, titled "Estimate of the Number and Costs of Excess Cancer Deaths Associated with Residence in the Oil-producing Areas of the Sucumbíos and Orellana Provinces of Ecuador" and filed by PLAINTIFFS' ATTORNEYS on September 16, 2010, for use in the LAGO AGRIO LITIGATION.

37. The term "ROURKE SUPPLEMENTAL EXPERT REPORT" shall mean and refer to the report submitted under the name of Daniel L. Rourke, titled "Addendum: Estimate of the Number and Costs of Excess Cancer Deaths Associated with Residence in the Oil-producing Areas of the Sucumbios and Orellana Provinces of Ecuador" and filed by PLAINTIFFS' ATTORNEYS on September 16, 2010, for use in the LAGO AGRIO LITIGATION.

38. The term "SCARDINA EXPERT REPORT" shall mean and refer to the report submitted under the name of R. Paolo Scardina, titled "Costs Associated with a Potable Water System to Supply the Affected Population of the Concession Area of Ecuador" and filed by PLAINTIFFS' ATTORNEYS on September 16, 2010, for use in the LAGO AGRIO LITIGATION.

39. The phrase "SELVA VIVA" shall mean and refer to the Ecuador organization Selva Viva, and any parent, subsidiary, division, or successor entity.

40. The term "SHEFFTZ EXPERT REPORT" shall mean and refer to the report submitted under the name of JSHEFFTZ CONSULTING, titled "Analysis of Unjust Enrichment" and filed by PLAINTIFFS' ATTORNEYS on September 16, 2010, for use in the LAGO AGRIO LITIGATION.

41. The term "STRATUS" shall mean and refer to Stratus Consulting, Inc. and includes STRATUS's partners, executives, officers, contractors, employees, servants,

representatives, agents, insurance companies, attorneys, accountants, investigators, assigns, or any other person or entity acting, or purporting to act, on STRATUS's behalf, either directly or indirectly.

42. The term "TEXPET" shall mean and refer to Texaco Petroleum Company.

43. The term "UBR" shall mean and refer to Uhl, Baron, Rana & Associates, the environmental consulting company by that name with headquarters in Lambertville, New Jersey, and includes, without limitation, its partners, executives, directors, officers, contractors, employees, servants, representatives, agents, insurance companies, attorneys, accountants, investigators, assigns, and any other person or entity acting, or purporting to act, on its behalf, either directly or indirectly, whether as an employee or as an independent contractor.

44. The phrase "WORK" shall mean and refer to any writing, analysis, study, report, research, investigation, examination, supervision, guidance, advising, opinion, ideas, calculation, inference, deduction, assumption, conclusion, technique, testing, sampling, or measuring, including any fieldwork, RELATING TO the LAGO AGRIO LITIGATION.

45. The phrase "YOU" or "YOUR" shall mean and includes yourself and all persons acting in your interest or on your instructions or assisting you, including without limitation DOUGLAS C. ALLEN, P.A., your agents, servants, and representatives, including attorneys, accountants, investigators, advisors, environmental consultants, contractors, and medical consultants.

## INSTRUCTIONS

The following instructions shall govern the response and production of DOCUMENTS:

1. In the event that any DOCUMENT called for by these Document Requests is withheld on the basis of a claim of privilege, that DOCUMENT is to be identified in a privilege

11

log as follows:  author(s); addressees(s); indicated or blind copy recipient(s); date; subject matter; number of pages, attachments, or appendices; all persons to whom distributed, shown or explained; the present custodian; and the nature of the privilege asserted.

 2. In the event that any DOCUMENT called for by these Document Requests has been destroyed, discarded, otherwise disposed of, or no longer exists, that DOCUMENT is to be identified as completely as possible, including, without limitation, the following information: author(s), addressee(s), indicated or blind copy recipient(s), date, subject matter, date of disposal, reason for disposal, PERSON authorizing the disposal, and the PERSON disposing of the DOCUMENT and identify its last known location and the reason it is no longer in existence.

 3. In the event that any information is redacted from a DOCUMENT produced pursuant to these Document Requests, that information is to be identified and the basis upon which such information is redacted should be fully stated.

 4. In the event that multiple copies or versions of a DOCUMENT exist, produce all non-identical copies of the DOCUMENT, including any and all drafts of the DOCUMENT.

 5. At the time and place of production of the DOCUMENTS requested herein, the DOCUMENTS requested are to be produced in the same order as maintained in the ordinary course of business.

 6. For each DOCUMENT produced, identify the specific Document Request category to which it is responsive.

 7. For each DOCUMENT produced, identify the office and location where that DOCUMENT was kept prior to this proceeding.

 8. As used herein, the singular form of a word shall be interpreted to include the plural form and the plural form shall be interpreted to include the singular whenever appropriate

12

in order to bring within the scope of this request any DOCUMENTS which might otherwise be considered to be beyond its scope.

## DOCUMENTS TO BE PRODUCED

1. All DOCUMENTS RELATING TO the ALLEN EXPERT REPORT, including but not limited to drafts, notes, and source materials used or considered by YOU in producing the ALLEN EXPERT REPORT and all COMMUNICATIONS RELATING TO such DOCUMENTS.

2. All DOCUMENTS PROVIDED to YOU by any PLAINTIFF AFFILIATED PERSON.

3. All DOCUMENTS RELATING TO CABRERA, the CABRERA WORKPLAN, the GLOBAL EXPERT ASSESSMENT, or the CABRERA REPORTS, and any COMMUNICATIONS RELATING TO such DOCUMENTS.

4. All DOCUMENTS RELATING TO YOUR retention as an expert in the LAGO AGRIO LITIGATION, including but not limited to your retention agreement, and all COMMUNICATIONS RELATING TO such DOCUMENTS.

5. All COMMUNICATIONS between or among YOU and CABRERA or any PERSON that CONTRIBUTED TO the CABRERA REPORTS.

6. All COMMUNICATIONS between or among YOU and any PLAINTIFF AFFILIATED PERSON RELATING TO the LAGO AGRIO LITIGATION, CABRERA, the CABRERA REPORTS or PLAINTIFFS' NEW EXPERT REPORTS.

7. All DOCUMENTS, including but not limited to invoices, receipts, billing statements, and credit agreements, RELATED TO payment for WORK provided by YOU directly or indirectly to any PLAINTIFF AFFILIATED PERSON.

8. All COMMUNICATIONS between or among YOU or ANY PLAINTIFF AFFILIATED PERSON and the GOVERNMENT OF ECUADOR RELATING TO the LAGO AGRIO LITIGATION, the EMA, PLAINTIFFS' NEW EXPERT REPORTS, CABRERA, the CABRERA REPORTS, and any DOCUMENTS RELATING TO such COMMUNICATIONS.

9. All DOCUMENTS RELATING TO any WORK by YOU or by any PLAINTIFF AFFILIATED PERSON PROVIDED directly or indirectly to the GOVERNMENT OF ECUADOR, and all COMMUNICATIONS RELATING TO such DOCUMENTS.

10. All DOCUMENTS RELATING TO any EXPERT TESTIMONY by YOU in the LAGO AGRIO LITIGATION.

11. All COMMUNICATIONS between or among YOU and any lawyer or attorney that represented or is representing any party in any of the 1782 ACTIONS RELATING TO the LAGO AGRIO LITIGATION, PLAINTIFFS' NEW EXPERT REPORTS, or the CABRERA REPORTS.

12. All DOCUMENTS RELATING TO websites, File Transfer Protocol sites, or analogous sites or protocols used for the viewing, access, transfer, distribution, uploading, or downloading of DOCUMENTS used or considered by YOU in producing the ALLEN EXPERT REPORT; all DOCUMENTS that IDENTIFY any PERSON that viewed, accessed, transferred, distributed, uploaded, or downloaded any DOCUMENTS from any such site; and all DOCUMENTS that IDENTIFY any DOCUMENT that was viewed, accessed, transferred, distributed, uploaded, or downloaded from any such site.

13. All DOCUMENTS RELATING TO the translation (from English to Spanish or Spanish to English) of any DOCUMENT responsive to this subpoena or the ALLEN EXPERT

14

REPORT, including all COMMUNICATIONS with any PERSON who translated such DOCUMENTS.

14. All DOCUMENTS RELATING TO TEXPET's remediation of the FORMER CONCESSION AREA.

15. All DOCUMENTS, including but not limited to databases, spreadsheets, graphs, computer programs, maps, internet websites, reports, statistical models or other formulas in any written or saved format, used in your WORK or reflected in the ALLEN EXPERT REPORT.

16. All EXPERT TESTIMONY, including but not limited to hearing transcripts, deposition transcripts, or written reports, PROVIDED by YOU in connection with any matter whose subject matter or method of analysis is RELATED TO environmental contamination, environmental remediation, groundwater or soil sampling or analysis, calculation of damages, or the petroleum industry.

17. All DOCUMENTS RELATING TO JUDICIAL INSPECTION REPORT DATA, including but not limited to data collected, used, or considered by CHEVRON's and PLAINTIFFS' JUDICIAL INSPECTION EXPERTS, used or considered by YOU in producing the ALLEN EXPERT REPORT.

18. All DOCUMENTS RELATING TO groundwater sampling or other sampling of environmental media used or considered by YOU in producing the ALLEN EXPERT REPORT.

19. All DOCUMENTS RELATING TO soil remediation sampling and analyses used or considered by YOU in producing the ALLEN EXPERT REPORT.

20. A clear, legible copy of the ALLEN EXPERT REPORT, including all tables, maps, and attachments thereto.