```
                   UNITED STATES DISTRICT COURT
                             FOR THE
                       DISTRICT OF VERMONT
```

Application of CHEXRON CORPORATION,:
                                            :
       Petitioner,              :
                                            :
To Issue Subpoenas for the Taking :
of a Deposition and the Production :
of Documents from                     :      Case No. 2:10-mc-91
                                            :
DOUGLAS C. ALLEN,                     :
                                            :
       Respondent.              :

## AMENDED MEMORANDUM and ORDER

On October 22, 2010, Chevron Corporation ("Chevron") submitted an ex parte application to this Court for an order pursuant to 28 U.S.C. § 1782(a) to conduct discovery for use in foreign proceedings.  Chevron sought to serve Douglas C. Allen with a subpoena to testify and to produce certain documents or electronically stored information at a deposition.  Rather than grant the ex parte application, the Court issued a show cause order requiring service of the Application, along with an expedited briefing schedule and a hearing date of November 19, 2010.  At the hearing on November 19, the Court ordered the Respondent to submit for in camera review all correspondence and drafts between himself and all firms or attorneys who had contact with him in connection with the creation of his expert report that was submitted in pending litigation in Ecuador.  Based upon the submissions of the parties, the arguments of counsel, and the Court's in camera review, the Court **grants in part** Chevron's

application, and limits the scope of discovery as detailed below.

## I. Background

The Lago Agrio oil field is an oil-rich area in eastern Ecuador. A Texaco subsidiary, Texaco Petroleum Company ("TexPet") held an interest in a consortium which explored for and extracted oil from the region from 1964 through 1992, when TexPet's concession expired. Petroecuador, Ecuador's state-owned oil company, has been the sole owner and operator of the consortium since 1992. Texaco is now a subsidiary of Chevron.

In November 1993, a group of Ecuadorian plaintiffs filed a class action lawsuit against Texaco in the Southern District of New York. *See Aguinda v. Texaco, Inc.*, No. 93 Civ. 7527 (S.D.N.Y. filed Nov. 3, 1993). The lawsuit alleged that Texaco was responsible for extensive contamination of the rain forest and its rivers and streams. In 1996 the district court granted Texaco's motion to dismiss on the grounds of forum non conveniens and failure to join indispensable parties. *Aguinda*, 945 F. Supp. 625, 628 (S.D.N.Y. 1996). On appeal, the Second Circuit vacated the dismissal and remanded for reconsideration, holding that dismissal for forum non conveniens was not appropriate, absent Texaco's commitment to submit to the jurisdiction of the Ecuadorian courts. *Jota v. Texaco, Inc.*, 157 F. 3d 153, 159 (2d Cir. 1998).

Texaco consented to personal jurisdiction in Ecuador, and the district court on remand again granted Texaco's motion to dismiss the *Aguinda* complaint on forum non conveniens grounds. *Aguinda v. Texaco, Inc.*, 142 F. Supp. 2d 534, 554 (S.D.N.Y. 2001). The Second Circuit affirmed the dismissal, conditioned on Texaco's agreement to waive statute of limitation defenses based on limitation periods expiring between the institution of the action and one year after a final judgment of dismissal. *Aguinda v. Texaco, Inc.*, 303 F.3d 470, 480 (2d Cir. 2002).

Meanwhile, in 1995, TexPet, Petroecuador and the Republic of Ecuador entered into an agreement in which TexPet agreed to perform environmental remediation in proportion to its ownership interest in the consortium in exchange for a release of claims by the Ecuadorian government and Petroecuador. In 1998, Ecuador and Petroecuador released TexPet from the obligations it assumed in the 1995 agreement. *See Republic of Ecuador v. ChevronTexaco Corp.*, 376 F. Supp. 2d 334, 342 (S.D.N.Y. 2005).

In 2003, following the final dismissal of the *Aguinda* lawsuit, a group of Lago Agrio residents filed a lawsuit against Chevron in Ecuador, based in part on an environmental law enacted in Ecuador in 1999. In 2004 Chevron and TexPet commenced an arbitration proceeding with the American Arbitration Association against Petroecuador in New York, claiming a right to indemnification in connection with the Lago Agrio litigation.

*See id.* The Republic of Ecuador and Petroecuador sought a stay of the arbitration in New York State Supreme Court, New York County; the case was removed to federal court and Chevron counterclaimed alleging a breach of the 1995 settlement. In 2007 the district court enjoined the New York arbitration, and the Second Circuit affirmed its decision. *Republic of Ecuador v. ChevronTexaco Corp.*, 499 F. Supp. 2d 452, 469 (S.D.N.Y. 2007), *aff'd*, 296 Fed. Appx. 124 (2d Cir. 2008), *cert. denied*, 129 S. Ct. 2862 (2009).

In 2009 Chevron commenced a new arbitration under the Bilateral Investment Treaty ("BIT") between the United States and Ecuador, utilizing the United Nations Commission on International Trade Law rules and procedures. In the BIT arbitration, Chevron has asserted that the Ecuadorian government has abused the criminal justice system[1] and has colluded with the Lago Agrio plaintiffs to undermine the 1995 settlement agreement.

In the course of the Lago Agrio litigation, in 2007, the Ecuadorian court appointed an expert, Richard Cabrera Vega, to conduct a global damages assessment of the area. His report assessing a total of $16 billion in remediation costs was

---

[1] The Ecuadorian government is pursuing criminal charges against two of Chevron's lawyers who are accused of falsifying or misrepresenting the nature of TexPet's remediation efforts in connection with the 1995 settlement agreement. *See In re Veiga*, ___ F. Supp. 2d ___, 2010 WL 4225564, at *3 (D.D.C. Oct. 20, 2010).

submitted to the Ecuadorian court in April 2008. He later revised that figure to $27 billion in November 2008. Chevron subsequently developed evidence that Cabrera was not a neutral or impartial expert, but had worked actively with the lawyers for the Lago Agrio plaintiffs and their consultants in producing this report. *See In re Chevron Corp.*, No. 10 MC 00002(LAK), 2010 WL 4449197 at *6-8 (S.D.N.Y. Nov. 5, 2010) (describing and discussing outtakes of *Crude*, a documentary about the Lago Agrio litigation, which suggest that the plaintiffs had advance knowledge that Cabrera would be appointed; that the plaintiffs' consultants would be contributing portions of Cabrera's report; and that in fact Cabrera attended at least one plaintiffs' strategy meeting).

Chevron sought and obtained discovery pursuant to 28 U.S.C. § 1782(a) from several of the Lago Agrio plaintiffs' United States-based consultants, to ascertain their involvement in the preparation of Cabrera's report. *See Chevron Corp. v. Stratus Consulting, Inc.*, No. 1:10-cv-00047-MSK-MEH, (D. Colo. filed Dec. 18, 2009); *In re Chevron Corp.*, No. 1:10-MI-0076 (N.D. Ga. filed February 19, 2010); *In re Chevron Corp.*, No. 4:10-MC-134 (S.D. Tex. filed Mar. 29, 2010); *In re Chevron Corp.*, No. M-19-111 (S.D.N.Y. filed Apr. 9, 2010); *In re Chevron Corp.*, No. 10-cv-2675 (SRC) (D.N.J. filed May 25, 2010); *In re Chevron Corp.*, No. 3:10-cv-01146-IEG-WMC (S.D. Calif. filed May 27, 2010); *In re*

*Veiga*, Nos. 10-370(CKK)(DAR) & 10-371(CKK)(DAR) (D.D.C. filed June 8, 2010); *In re Chevron Corp.*, No. 3:10-cv-00686 (M.D. Tenn. filed July 16, 2010).

As the controversy over the integrity of the Cabrera report mounted, the Lago Agrio plaintiffs petitioned the Ecuadorian court to allow both parties to present an additional submission on damages. The Lago Agrio Court granted the request and allowed the parties to file their submissions by September 16, 2010. One of the reports appended to the plaintiffs' submission was prepared by the Respondent's firm, Douglas C. Allen, P.A. ("DCA"), entitled *Environmental Damages Valuation: Texpet-Ecuador Concession Area* ("Allen Report"). The Allen Report describes DCA's task as having been "retained on behalf of plaintiffs' counsel . . . to assist in developing an independent evaluation and estimate of the potential costs for the remediation of environmental damages," specifically "limited to the development of potential costs for the remediation of contaminated soil and groundwater at well sites and production stations, and sediments in waterways . . . ." Allen Report 1, ECF No. 3-19. The Allen Report names its sources, including the Cabrera reports and technical reports cited in the Cabrera reports. *Id.* at 3.

Simultaneously with the filing of this action, Chevron filed five additional § 1782 applications seeking discovery from other experts whose reports formed part of the plaintiffs' September 16

submission.  *See In re Chevron Corp.*, No. 7:10-mc-00067-jct (W.D. Va. filed Nov. 4, 2010) (Respondent Robert Scardina); *In re Chevron Corp.*, Nos. 10-CV-2989 & 2990 (D. Md. filed Oct. 22, 2010) (Respondents Carlos Picone and Daniel Rourke); *In re Chevron Corp.*, No. 10-mc-10352-JLT (D. Mass. filed Oct. 22, 2010) (Respondent Jonathan Shefftz); *In re Chevron Corp.*, No. 1:10-mc-00053-SSB-KLL (S.D. Ohio filed Oct. 22, 2010) (Respondent Lawrence Barnthouse).

Chevron seeks deposition testimony and all documents related to the Allen Report, including but not limited to drafts, notes and source materials, and all communications relating to such documents, for use in the Lago Agrio litigation and the BIT arbitration.

## II. Discussion

Section 1782(a) of Title 28, United States Code, permits a district court of the district in which a person resides or is found to give his testimony or produce a document for use in a proceeding in a foreign or international tribunal.  The order may be made upon the application of any interested person, and may direct that the testimony be given or document be produced before a person appointed by the court.  The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or international tribunal.  If the order does not otherwise prescribe, the Federal

Rules of Civil Procedure govern.  No one may be compelled to give his testimony or to produce a document in violation of any legally applicable privilege.  28 U.S.C. § 1782(a).

The Supreme Court held, in *Intel Corp. v. Advanced Micro Devices, Inc.*, that § 1782(a) authorizes, but does not require, a district court to provide assistance in obtaining discovery to litigants before foreign and international tribunals.  542 U.S. 241, 255 (2004).  As guidance for the exercise of its discretion, a district court should consider 1) whether "the person from whom discovery is sought is a participant in the foreign proceeding;" 2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or court or agency abroad to United States federal-court judicial assistance;" 3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States;" 4) whether the discovery request is "unduly intrusive or burdensome."  *Id.* at 264-65.

The statutory requirements are met for purposes of the Lago Agrio litigation:  Allen works in Vermont, and thus "is found" in this district; the discovery is for use in a proceeding in a foreign tribunal; and, as a defendant, Chevron is an "interested person."  28 U.S.C. § 1782(a).

With respect to the first *Intel* factor, Allen is not a party

to the Lago Agrio litigation; this factor favors discovery.  With respect to the second factor, the Respondent argues that the Lago Agrio Court is not receptive to the evidence that would be produced in discovery.  The second *Intel* factor is not directed to the receptivity of the foreign government or court to the particular *evidence* that might be produced in discovery, but to the receptivity of the foreign government or court to the judicial assistance of a federal court.  *See Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 84 (2d Cir. 2004) (noting that the German government was obviously unreceptive to the judicial assistance of an American federal court where the district court had received specific requests from the German Ministry of Justice and the Bonn Prosecutor to deny the discovery requests); *see also Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1101 (2d Cir. 1995) (rejecting, in a pre-*Intel* case, the district court's denial of a § 1782(a) application where "no authoritative declarations by French judicial, executive or legislative bodies objecting to foreign discovery assistance appear in the record").

There is no evidence that the Lago Agrio Court or the Ecuadorian government are unreceptive to the assistance of a United States federal court; in fact the Ecuadorian government has sought § 1782(a) assistance in related litigation.  *See In re Republic of Ecuador*, No. 3:10-mc-80225-CRB (N.D. Cal. filed Sept.

10, 2010) (Respondent Borja); *In re Republic of Ecuador*, No. 1:10-mc-00040-GSA (E.D. Cal. filed Sept. 14, 2010) (Respondent Hansen). That the Lago Agrio court may at some point in this litigation conclude that the mountain of evidence produced by these § 1782(a) applications is not particularly relevant to the issues before it, is not only speculative but does not constitute a lack of receptivity to judicial assistance. At present the Lago Agrio court accepts for filing the materials submitted by the parties. In the absence of evidence that the government of Ecuador or the Lago Agrio Court is unreceptive to United States federal-court assistance, this factor does not favor denying the application.

With respect to the third *Intel* factor, the Respondent argues that Chevron's application is an attempt to circumvent the proof-gathering restrictions of the Ecuadorian civil law system. The Supreme Court's holding in *Intel* weakens this argument. As the Court held, "§ 1782(a) contains no threshold requirement that evidence sought from a federal district court would be discoverable under the law governing the foreign proceeding." *Intel*, 542 U.S. at 247. There is no indication that the Lago Agrio Court would refuse to accept for filing information discovered pursuant to a § 1782(a) application; in such a case imposing a foreign-discoverability rule "would serve only to thwart § 1782(a)'s objective to assist foreign tribunals in

obtaining relevant information that the tribunals may find useful but, for reasons having no bearing on international comity, they cannot obtain under their own laws." *Id.* at 262.  Consideration of the third factor does not favor denying Chevron's application.

With respect to the fourth *Intel* factor, "unduly intrusive or burdensome requests may be rejected or trimmed." *Id.* at 265. Chevron seeks to depose six new experts disclosed in the September 16, 2010 submission to the Lago Agrio Court "regarding the basis for and scientific validity of their opinions." Chevron's Reply Mem. 12, ECF No. 25.  Although the Respondent argues that Chevron is forcing the Lago Agrio Plaintiffs to incur massive costs and expenses defending frivolous discovery requests in a multitude of district courts around the country, this Court is only empowered to determine whether the subpoena directed toward Mr. Allen is unduly burdensome.  It is not.  The deposition of a trial expert is routine and to be expected.

Allen also argues that allowing his deposition would violate Federal Rule of Civil Procedure 30(a)(2)(A)(i), which requires a party to obtain leave of court if the deposition would result in more than ten depositions being taken.  Fed. R. Civ. P. 30(a)(2)(A)(i).  Assuming that Rule 30 applies to testifying expert depositions, and to the cumulative effect of multiple § 1782(a) proceedings, the court grants leave to take Allen's deposition, consistent with Rule 26(b)(2).  *See id.*

Given that the statutory requirements are met, and the Court finds that the discretionary *Intel* factors do not preclude the testimony or production of documents, the Court **grants** Chevron's application for an order permitting it to conduct discovery.[2] *See, e.g., Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 377, 380 (5th Cir. 2010) (affirming grant of limited discovery from an environmental consultancy firm on the question whether it produced a report for Cabrera that he integrated into his report, without disclosing his reliance on it).

Allen may not be compelled to give testimony or produce documents or other materials that would invade a legally applicable privilege, however.  28 U.S.C. § 1782(a).  The Court will also require that Allen's testimony be taken, and documents and other materials produced, in accordance with the Federal Rules of Civil Procedure.  *See id*.  In particular, Federal Rule of Civil Procedure 26(b)(4)(B) and (C), effective December 1, 2010, provides work-product protection against discovery regarding draft expert disclosures or reports and communications between expert witnesses and counsel.  Rule 26(b)(4)(B) shields drafts of expert reports or disclosures from discovery.  Rule 26(b)(4)(C) shields communications between a party's attorney and

---

[2]  Because the Court grants Chevron's application on the basis of the Lago Agrio litigation, it is unnecessary to address whether the BIT arbitration supplies an additional justification for obtaining discovery from Allen.

the expert,

> except to the extent that the communications: (i) relate to compensation for the expert's study or testimony; (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.

Fed. R. Civ. P. 26(b)(4)(C).

Anticipating that this Court might apply the newly-amended Rule 26, the parties debated whether Chevron's evidence of collusion in the Cabrera report requires disclosure of materials otherwise protected by the amendments.  Respondent submitted for in camera review all correspondence and drafts between himself and all firms or attorneys who had contact with him in connection with the creation of his expert report.  Having reviewed the materials, the Court is satisfied that no evidence of fraud, false pretenses or undue influence appears, and that adhering to Rules 26(b)(4)(B) and (C) strikes the appropriate balance between Chevron's right to explore the assumptions and bases for Allen's opinion and sources of potential bias, and the Lago Agrio attorneys' right to work-product protection for mental impressions, conclusion, opinions, or legal theories.

Accordingly, the scope of discovery permitted by this order is **limited**, as follows.  Respondent Allen's general objections to the subpoena duces tecum and ad testificandum are overruled to the extent they seek protection beyond the applicable rules of

civil procedure.  Allen's objection to Category 1 of the Chevron subpoena is sustained in part.  The category seeks the production of all documents relating to the Allen Report, and all communications relating to such documents.  Allen is not required to produce drafts of his report or communications between himself and the Lago Agrio attorneys or their representatives, except to the extent that the communications deal with facts concerning the creation of the report; facts or data contained within the report; facts, data or assumptions provided by the attorneys or their representatives that Allen considered or relied upon in creating his report; or matters relating to his compensation.

Allen's objection to Category 2 is sustained in part.  The category seeks the production of all documents provided by any Plaintiff-affiliated person.  As detailed above, Allen is not required to produce documents that reflect core attorney work product, except to the extent provided by the three exceptions to Rule 26(b)(4)(C).

Allen's objection to Category 3 (all documents relating to Cabrera or Cabrera's reports) is denied, with the exception that any communications relating to the Cabrera documents may be protected by Rule 26(b)(4)(C) if made by Plaintiffs' attorneys or their representatives and not included within the three exceptions.

Allen's objection to Category 4 (documents relating to

retention as an expert) is denied.

Allen's objection to Category 5 (communications with Cabrera or any person who contributed to the Cabrera reports) is denied, with the exception that communications may be protected by Rule 26(b)(4)(C) if made by Plaintiffs' attorneys or their representatives and not included within the three exceptions.

Allen's objection to Category 6 is sustained in part.  The category seeks the production of all communications between Allen and any Plaintiff-affiliated person relating to the Lago Agrio litigation, Cabrera, the Cabrera reports or Plaintiffs' new expert reports.  Allen is not required to disclose communications between himself and the Lago Agrio attorneys or their representatives, except to the extent that the communications deal with facts concerning the creation of the report; facts or data contained within the report; facts, data or assumptions provided by the attorneys or their representatives that Allen considered or relied upon in creating his report; or matters relating to his compensation.

Allen's objection to Category 7 (documents related to payment for work provided by him directly or indirectly to any Plaintiff-affiliated person) is denied.

Allen's objection to Category 8 (communications or documents reflecting communications between Allen or any Plaintiff-affiliated person and the government of Ecuador concerning the

Lago Agrio litigation and related matters) is denied, with the exception that communications may be protected by Rule 26(b)(4)(C) if made by Plaintiffs' attorneys or their representatives to Allen and not included within the three exceptions.

Allen's objection to Category 9 (all documents and communications relating to any work by Allen or by any Plaintiff-affiliated person provided directly or indirectly to the government of Ecuador) is denied.

Allen's objection to Category 10 is sustained in part.  The category seeks production of all documents relating to any expert testimony by Allen in the Lago Agrio litigation.  Allen is not required to disclose draft documents relating to his expert testimony, or documents that reflect communications between Allen and the Plaintiffs' attorneys or their representatives, except to the extent provided in the three exceptions set forth in Rule 26(b)(4)(C).

Allen's objection to Category 11 is sustained in part.  The category seeks production of all communications between Allen and any attorney representing any party in any of the § 1782(a) actions, the new expert reports or the Cabrera reports.  Allen is not required to disclose communications between himself and these attorneys, except to the extent that the communications deal with facts concerning the creation of the report; facts or data

contained within the report; facts, data or assumptions provided by the attorneys or their representatives that Allen considered or relied upon in creating his report; or matters relating to his compensation.

Allen's objection to Category 12 (all documents relating to websites or sites used for accessing or downloading documents, together with documents that identify any person who accessed or downloaded the documents and documents that identify documents that were accessed or viewed in such fashion) is denied, with the exception that Allen is not required to disclose draft documents relating to his expert testimony, or documents that reflect communications between Allen and the Plaintiffs' attorneys or their representatives, except to the extent provided in the three exceptions set forth in Rule 26(b)(4)(C).

Allen's objection to Category 13 (all documents and communications relating to the translation of the Allen Report or any document responsive to the subpoena) is denied, with the exception that Allen is not required to disclose draft documents relating to his expert testimony, or documents that reflect communications between Allen and the Plaintiffs' attorneys or their representatives, except to the extent provided in the three exceptions set forth in Rule 26(b)(4)(C).

Allen's objection to Category 14 (all documents relating to TexPet's remediation of the former Concession area) is denied,

17

with the exception that Allen is not required to disclose draft documents relating to his expert testimony, or documents that reflect communications between Allen and the Plaintiffs' attorneys or their representatives, except to the extent provided in the three exceptions set forth in Rule 26(b)(4)(C).

Allen's objection to Category 15 is sustained in part.  The category seeks production of all documents used in Allen's work relating to the Lago Agrio litigation or reflected in the Allen Report.  Allen is not required to produce drafts of his report or documents that reflect communications between himself and the Lago Agrio attorneys or their representatives, except to the extent that the communications deal with facts concerning the creation of the report; facts or data contained within the report; facts, data or assumptions provided by the attorneys or their representatives that Allen considered or relied upon in creating his report; or matters relating to his compensation.

Allen's objection to Category 16 (all expert testimony provided by Allen in connection with environmental contamination, remediation, groundwater or soil sampling or analysis, calculation of damages or the petroleum industry) is sustained in part.  Allen is obligated to provide a list of cases in which, during the previous four years, he testified as an expert at trial or by deposition.  Fed. R. Civ. P. 26(a)(2)(B)(v).

Allen's objection to Category 17 (all documents relating to

judicial inspection report data used or considered by Allen) is denied, except that Allen is not required to produce documents that would be protected by Rule 26(b)(4)(B) or (C).

Allen's objection to Category 18 (all documents relating to groundwater sampling) is denied, except that Allen is not required to produce documents that would be protected by Rule 26(b)(4)(B) or (C).

Allen's objection to Category 19(all documents relating to soil remediation sampling and analyses) is denied, except that Allen is not required to produce documents that would be protected by Rule 26(b)(4)(B) or (C).

Allen's objection to Category 20 (a copy of the Allen Report) is denied.

If Allen withholds information under Rule 26(b)(4)(B) or (C) in the course of his production of materials responsive to the subpoena, he must comply with Rule 26(b)(5)(A).

Dated at Burlington, in the District of Vermont, this 3rd day of December, 2010.

/s/ William K. Sessions III
Chief Judge
U.S. District Court